**Leroy LE BLANC, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41957.**

Court of Criminal Appeals of Texas.
April 2, 1969.

Rehearing Denied May 21, 1969.

Second Rehearing Denied June 25, 1969.

848

Lamson & Plessala, by Frank M. Lamson, Port Arthur, Baldwin, Goodwin & Matheny, by Joe B. Goodwin, Beaumont (on appeal only), for appellant.

W. C. Lindsey, Dist. Atty., Lawrence J. Gist, Asst. Dist. Atty., Beaumont, and Jim

D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is using profane language over the telephone (Art. 476 Vernon's Ann.P.C.); the punishment, 12 months in jail and a $1,000.00 fine.

The complaint and information alleged that such language was used "over and through the telephone to Beverly Verret" on or about the 8th day of October, 1967.

The first ground of error complains that the procedure by which police secured the identification of appellant's voice by the prosecuting witness, Beverly Verret, without an opportunity to compare appellant's voice with the voices of others, violated due process and concepts of fundamental fairness.

Palmer v. Peyton, 359 F.2d 199 (4th Cir.1966), cited with approval in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199, and the principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, are cited as applicable.

Five young girls were pictured with their antique automobiles in the Port Arthur News of October 1, 1967. The afternoon of the same day each of the girls received a telephone call from a person whose voice was described as a deep man's voice, a low muffled voice, a low gutteral type voice—decided hesitations in it—a tremendous amount of hesitancy—fairly uneducated.

Except the call to Sally Logsdon, who declined his invitation to go riding with him and hung up without giving him a chance to say another word, all of the conversations included obscene and profane language used by the caller; and subsequent calls were made.

The telephone conversation in which profane, obscene and indecent language was used to Beverly Verret was in a call to Vicky Verret, late on Tuesday night October 3, 1967. Vicky was asleep. Her mother answered the call, awakened her husband and he listened from an extension phone while she pretended to be Vicky. Mrs. Verret kept the conversation going, believing that the telephone company was tracing the call.

A subsequent call on Sunday was traced, Mr. Verret taking the telephone from Vicky while her mother went to another telephone and called the number she had been told to call to report such a call.

The procedure by which the police secured the identification of appellant's voice by Beverly Verret, claimed to have violated due process and concepts of fundamental fairness, was this.

█ Following the complaint of Mr. and Mrs. Verret, a gadget referred to as a reverse polarization trap was placed on the Verret's telephone number. When Mrs. Verret called, on Sunday afternoon, and told J. D. Webb, the Switchman, that "the call was up," it was traced and Mr. Webb ascertained that the calling number was YU2–9365, a telephone installed in the apartment of Leroy Le Blanc, who had requested that the number not be listed.

The next morning Mr. and Mrs. Verret were called to the police station by Sgt. Joe Cuccia who advised them that he had the number from which the traced call was made to their number.

Sgt. Cuccia told Mrs. Verret that YU2–9365 was the number and Leroy Le Blanc was the name furnished by the telephone company. He asked Mrs. Verret to dial the number and talk to Leroy Le Blanc and to tell him that her name was Betty and say she was a friend of Sue, and she was from Houston. Sgt. Cuccia had known appellant for some 15 years.

After seeing Mrs. Verret place the call, Sgt. Cuccia left the room and went to the

next room where he and Mr. Verret listened on an extension phone to the conversation between Mrs. Verret and the person she called.

As soon as the conversation ended, Mr. Verret looked at Sgt. Cuccia and said that was the same voice he had heard the night before at the time he received the telephone call at his home.

Mr. Verret and Sgt. Cuccia then went into the office where Mrs. Verret was and she said "that is the same voice."

In their testimony at the trial, both the complaining witness and her husband identified the voice they heard in the telephone conversation between Mrs. Verret and the person who answered the call she placed from the police station as the voice they heard using profane, vulgar and indecent language over the telephone to Mrs. Verret on Tuesday.

Sgt. Cuccia testified that he had known appellant for more than 15 years and knew his voice very well. He was positive in his identification of the voice of the person who answered Mrs. Verret's call from the police station and conversed with her, as that of Leroy Le Blanc, the defendant on trial.

United States v. Wade, Gilbert v. California, and Stovall v. Denno, supra, are not deemed applicable under the facts. These cases relate to in-custody identification procedures.

Having ascertained that the call on Sunday was placed from a certain telephone and that such telephone was installed in a certain apartment and that it was installed for appellant who requested that the number not be listed, there remained the burden of the state to identify the person who placed the call and used profane and indecent language to Beverly Verret as the defendant on trial.

Appellant was not in custody. Until the call on Sunday was traced to the unlisted telephone in his apartment there is nothing in the record to indicate that he was a suspect in any of the obscene calls. The calls stopped after appellant's arrest.

Mrs. Verret had no way of knowing who would answer when she dialed the number given her. Had she not recognized the voice as that which used the profane and indecent language to her, appellant would not have been inculpated, though the call was traced to his telephone.

Palmer v. Peyton, supra, also deals with identification of the voice of an accused in custody.

The ground of error relates to the identification of appellant's voice by the prosecuting witness. By the same procedure the husband of the prosecuting witness, who listened on an extension phone in another room, was allowed the opportunity to identify the voice as that he had heard in the calls to his daughter.

■ Grounds of error Nos. 2, 3, 4 and 5 relate to the testimony as to telephone calls to the other girls pictured with their antique automobiles by a voice of a similar description.

The testimony was limited in the court's charge to intent, motive, system and identity, and the jury was instructed that such testimony could not be considered for any purpose unless the jury found and believed beyond a reasonable doubt that the defendant committed such other offenses.

■ Ground of error No. 6 complains of the introduction in evidence of business records of the telephone company reflecting that LeRoy Le Blanc had a telephone installed in his apartment, the number YU2–9365 being unlisted at his request.

The objection was that such records were hearsay and no proper predicate was laid to bring them within any exception to the hearsay rule.

The records were identified by the witness Kenneth H. Miller, Security Supervisor for the telephone company, who testi-

fied that such records were in his custody and he was familiar with them, though the entries therein were made by other employees of the company.

The record reflects that the objection made at the trial was that the witness "has not shown himself to be the proper person to identify these as business records."

The Witness Miller testified that it was standard procedure of the telephone company for all records to come into his possession and control when an obscene call complaint was made to the company. Mr. Miller was "a qualified witness" and custodian of the records as such terms are used in Art. 3737e, Vernon's Ann.Civ.St.

■ Ground of error No. 7 complains of the court's failure to charge on circumstantial evidence.

Mrs. Verret identified the voice which Sgt. Cuccia testified was that of appellant as that of the person who used profane, vulgar and indecent language through the telephone to her.

■ Ground of error No. 8 complains that no plea was entered to the information.

The judgment recites that the jury "heard the information read and the Defendant's plea of not guilty thereto, * * *." The transcript of the court reporter's notes reflecting that the *complaint* was read (instead of the information) is shown to be a clerical error.

■ The remaining ground for reversal presents the contention that Art. 476 V.A.P.C., defining the offense charged in the complaint and information, is void because too vague and indefinite.

The constitutionality of Art. 476, supra, was upheld by this court in Alobaidi v. State, Tex.Cr.App., 433 S.W.2d 440.

The grounds of error set forth in appellant's brief are overruled.

The judgment is affirmed.

## OPINION

## ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

■ While appellant is correct in his statement that in all cases where extraneous offenses are admitted it is incumbent upon the state to prove that the accused is the person who committed such offense but this as any other fact may be established by circumstantial evidence, 23 Tex.Jur.2d 251, Evidence Section 164.

Here are the facts in the case at bar. Page one of the "woman's activities" section of the Port Arthur News, October 1, 1967, issue carried pictures of Sally Logsdon, Vicky Verret, Diane Petry, Carol Enright and Gretchen Luders. All were pretty girls. This prosecution was for the telephone call to Beverly Verret, the mother of Vicky. The other calls were made soon after the news story was printed and were to the other girls pictured in the newspaper. Each girl described appellant's voice in practically the same manner. No calls were proven to anyone who did not appear in the news account. All calls first invited the pretty girls to go riding with the caller.

■ We conclude from the above that the circumstantial evidence was sufficient to support the jury's finding that appellant made all the calls which were testified to by the witnesses.

Remaining convinced of the soundness of our original opinion, appellant's motion for rehearing is overruled.