Shirley KRAMER, Petitioner-Appellee,

v.

Tom PRICE, Judge, County Criminal Court No. 5, and Carl Thomas, Sheriff, Dallas County, Texas, Respondents-Appellants.

No. 82–1185.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1983.

Paul H. Chitwood, Dallas, Tex., for petitioner-appellee.

Before WISDOM, RUBIN and TATE, Circuit Judges.

WISDOM, Circuit Judge:

This appeal from the grant of a writ of habeas corpus requires us to decide whether the Texas Harassment Statute under which the petitioner was convicted is void for vagueness in violation of the first and fourteenth amendments to the United States Constitution. We conclude that it is and affirm.

### I.

Shirley Kramer, the petitioner, was tried by a jury in state court and found guilty of harassment. Kramer and John Keiser lived together for several months during 1970. In 1971, Keiser married another woman, Anne, but Kramer continued to write to him frequently for three years following his marriage.[1] Six days after Anne Keiser returned home from the hospital with the couple's first-born child, the United States Postal Service delivered a postcard addressed to Mr. Keiser. Affixed to the back of the postcard was the following message quoted from a newspaper advertisement:

Baby Problem Solved!

—with this beautiful

ALL METAL

CASKET–VAULT COMBINATION

CRYPT a CRIB

P.O. Box 11074

Cincinnati, Ohio 45211 [2]

Based on this bizarre message, the State charged the petitioner with violating the

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondents-appellants.

1. Kramer's letters and postcards to John Keiser were so voluminous that they filled two to three grocery sacks. *Kramer,* 605 S.W.2d at 865 (Tex.Cr.App.1980) (en banc).

2. This postcard was addressed to John Keiser but was removed from the couple's mailbox by

his wife, Anne, the complainant in the state's criminal proceedings. In her earlier correspondence to Keiser, Kramer used restricted delivery postal service which ensures that the addressee will be the actual recipient of the posted items. The postcard at issue was not mark-

Texas Harassment Statute, Tex.Penal Code Ann. § 42.07(a)(1). She was tried by a jury in state court, found guilty, and sentenced to six months imprisonment. The sentence, however, was suspended, and she was placed on probation for six months. The Texas Court of Criminal Appeals, en banc, affirmed. *Kramer v. State,* 605 S.W.2d 861 (Tex.Cr.App.1980) (en banc).

After exhausting her state remedies, Kramer sought habeas corpus relief in federal district court. The court found the Texas Harassment Statute to be unconstitutionally vague and overbroad, declared it void on both grounds, and entered judgment granting the writ. On appeal, the State challenges both conclusions and argues that the Harassment Statute protects important privacy interests. We address only the contention that the statute is void for vagueness.

## II.

The Texas Harassment Statute, Tex.Penal Code Ann. § 42.07 provides:

(a) A person commits an offense if he intentionally:

(1) communicates by telephone or in writing in vulgar, profane, obscene, or indecent language or in a coarse and offensive manner and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient;

The State argues that § 42.07 is not vague because the statute's requirement of intent makes its application turn on the state of mind of the actor, and therefore ensures that the actor will have adequate notice of the proscribed conduct.

 An enactment is void for vagueness [3] under the due process clause of the fourteenth amendment if it fails to draw reasonably clear lines between lawful and unlawful conduct. *Smith v. Goguen,* 1974, 415 U.S. 566, 574–578, 94 S.Ct. 1242, 1247–1249, 39 L.Ed.2d 605, 612–615. Vague statutes fail to provide citizens with fair notice or warning of statutory prohibitions so that they may act in a lawful manner. *Connally v. General Const. Co.,* 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328; *Lanzetta v. New Jersey,* 1939, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890; *Papachristou v. City of Jacksonville,* 1972, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115.

 The infirmities of vagueness, however, extend beyond the lack of fair notice. The absence of a determinate standard gives police officers, prosecutors, and the triers of fact unfettered discretion to apply the law, and thus there is a danger of arbitrary and discriminatory enforcement. The Supreme Court recently defined the void-for-vagueness doctrine as follows:

As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' Where the legislature fails to provide such minimal

---

ed "restricted delivery". In the state appellate court's view, Kramer's failure to use the restricted delivery service in mailing the postcard, combined with her knowledge of John Keiser's work schedule and Anne Keiser's pregnancy, supported the prosecution's assertion that Kramer intended that Anne Keiser receive and read the postcard. The court found an intention to annoy and alarm in the message itself, and Kramer's knowledge of Anne Keiser's status as a new mother. *See Kramer,* 605 S.W.2d at 865.

3. A defendant may challenge the constitutionality of a statute on vagueness grounds, even though the statute may not be vague as applied to his conduct, where the statute at issue purports to regulate or proscribe rights of speech protected by the first amendment. *See Coates v. City of Cincinnati,* 1971, 402 U.S. 611, 619–620, 91 S.Ct. 1686, 1690–1691, 29 L.Ed.2d 214, 220–221 (White, J., dissenting). *See also Gooding v. Wilson,* 1972, 405 U.S. 518, 521, 92 S.Ct. 1103, 1105–1106, 31 L.Ed.2d 408, 413.

guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'

*Kolender v. Lawson,* —— U.S. ——, —— – ——, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983) (citations omitted). *See Hynes v. Mayor & Council of Borough of Oradell,* 1976, 425 U.S. 610, 622, 96 S.Ct. 1755, 1761, 48 L.Ed.2d 243, 254; *Grayned v. City of Rockford,* 1972, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28. *See also* Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L. Rev. 67, 75–85 (1960). In the first amendment area, "[t]he very existence of . . . [a] censorial power, regardless of how or whether it is exercised, is unacceptable." *Int'l. Soc'y For Krishna Consciousness v. Eaves,* 5 Cir.1979, 601 F.2d 809, 822–23. When a statute is capable of reaching first amendment freedoms, the doctrine of vagueness "demands a greater degree of specificity than in other contexts." *Smith v. Goguen,* 415 U.S. at 573, 94 S.Ct. at 1247, 39 L.Ed.2d at 612. *See also Hynes v. Mayor & Council of Borough of Oradell,* 425 U.S. at 620, 96 S.Ct. at 1760, 48 L.Ed.2d at 253; *NAACP v. Button,* 1963, 371 U.S. 415, 432– 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405, 418; Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 75– 85 (1960).

The State relies on *Collection Consultants, Inc. v. State,* 556 S.W.2d 787, 793–94 (Tex.Cr.App.1977), *appeal dismissed,* 1978, 436 U.S. 901, 98 S.Ct. 2228, 56 L.Ed.2d 399, for the proposition that "annoy" and "alarm" are not vague terms. In that case, the Court of Criminal Appeals relied on earlier decisions upholding the constitutionality of Article 476, V.A.P.C., the predecessor to the current Texas Harassment Statute. Noting that there were no meaningful distinctions between the language of the old statute and its replacement, the court

relied on these earlier cases to justify its conclusion that § 42.07 was not vague.[4] We find the reasoning of *Collection Consultants* unpersuasive.

The Supreme Court struck down a statute using the word "annoy" in *Coates v. City of Cincinnati,* 1971, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214. The city ordinance at issue in *Coates* made it a criminal offense for three or more individuals to assemble on public sidewalks and conduct themselves in a manner which might annoy passersby. The Ohio Supreme Court held that the statute was not vague in the light of its well-understood dictionary definition:

> The ordinance prohibits, inter alia, 'conduct . . . annoying to persons passing by.' The word 'annoying' is a widely used and well understood word; it is not necessary to guess its meaning. 'Annoying' is the present participle of the transitive verb 'annoy' which means to trouble, to vex, to impede, to incommode, to provoke, to harass or to irritate.

21 Ohio St.2d 66, 69, 255 N.E.2d 247, 249.

The Supreme Court rejected the Ohio Supreme Court's simple reliance on a dictionary meaning. The Court found two closely related flaws which rendered the statute void for vagueness. First, the Court recognized that some vagueness inheres in the word annoy:

> Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.

402 U.S. at 614, 91 S.Ct. at 1688, 29 L.Ed.2d at 217. Second, the ordinance did not specify and the Ohio Supreme Court "did not indicate upon whose sensitivity a violation does depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer,

---

**4.** The cases relied upon by the court in *Collection Consultants* include *Schuster v. State,* 450 S.W.2d 616 (Tex.Cr.App.1970); *Alobaidi v. State,* 433 S.W.2d 440 (Tex.Cr.App.1968), *cert. denied,* 1968, 393 U.S. 943, 89 S.Ct. 313, 21 L.Ed.2d 281; and *LeBlanc v. State,* 441 S.W.2d

847 (Tex.Cr.App.1969). As pointed out by Judge Roberts in his dissent in *Kramer,* the *Kramer* majority's reliance on these cases is a non sequitur which adds nothing to resolving the vagueness issue.

or the sensitivity of a hypothetical reasonable man". 402 U.S. at 613, 91 S.Ct. at 1688, 29 L.Ed.2d at 217. The inherent vagueness in attempting to define what annoys people and the failure to specify whose sensitivities are relevant compelled the Court to conclude that the ordinance was vague.

We conclude that the Texas Harassment Statute suffers from the same infirmities as the ordinance in *Coates.* The Texas courts have made no attempt to construe the terms "annoy" and "alarm" in a manner which lessens their inherent vagueness.[5] Of greater importance, the Texas courts have refused to construe the statute to indicate whose sensibilities must be offended. *See Kramer v. State,* 605 S.W.2d 861 (1980 Tex.Cr.App.); *Collection Consultants, Inc. v. State,* 556 S.W.2d 787 (Tex.Cr. App.1977). *Coates* recognized that a statute is unconstitutionally vague when the standard of conduct it specifies is dependent on each complainant's sensitivity. Whereas *Coates* specified that a passerby's sensitivity must be offended, the statute in this case makes no attempt at all to specify whose sensitivity must be offended. In the absence of judicial clarification, enforcement officials, as well as the citizens of Texas, are unable to determine what conduct is prohibited by the statute.[6]

The State maintains that the Texas Harassment Statute is restricted to individuals who act with an intent to annoy. An intent requirement, it contends, ensures that the actor will have fair notice that his contemplated conduct is forbidden. We disagree. Specifying an intent element does not save § 42.07 from vagueness because the conduct which must be motivated by intent, as well as the standard by which that conduct is to be assessed, remain vague. Whatever Kramer's intent may have been, if she was unable to determine the underlying conduct proscribed by the statute, then the statute fails on vagueness grounds.

### III.

By failing to provide reasonably clear guidelines, § 42.07 gives officials unbounded discretion to apply the law selectively and subjects the exercise of the right to speech to an unascertainable standard. Accordingly, we hold that the Texas Harassment Statute is unconstitutional on its face for vagueness.[7]

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

The standard to which my brethren correctly adhere is that a law is unconstitutionally vague only if it fails to make reasonably clear the distinction between what is forbidden and what is lawful conduct. The

5. An example of a limiting construction which saved a vague statute can be found in *Chaplinsky v. New Hampshire,* 1941, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. The Court upheld a statute that punished "offensive, derisive or annoying" words because the state court had construed the statute to apply to words that "have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed". The state court applied the statute to words that men of common intelligence would understand as being likely to cause an average addressee to fight.

6. We acknowledge that the statute at issue could have been given a narrowing construction that would have saved it from constitutional infirmity. Our point is that the Texas court refused to narrow the statute by, for example, holding that it applies to writings which would annoy the hypothetical reasonable person and that its standard does not vary with the sensitivity of each complainant. As the Supreme Court stated in *Ashton v. Kentucky,* 1966, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469, "where an accused is tried and convicted under a broad construction of an Act which would make it unconstitutional, the conviction cannot be sustained on appeal by a limiting construction which eliminates the unconstitutional features of the Act, as the trial took place under the unconstitutional construction of the Act." 384 U.S. at 198, 86 S.Ct. at 1409, 16 L.Ed.2d at 471; *see Shuttlesworth v. Birmingham,* 1965, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176. Our examination of the trial court's instruction to the jury convinces us that no attempt was made to limit the meaning of the statute in a manner that cured its vagueness.

7. Our finding on the issue of vagueness precludes the need to address the state's arguments with respect to overbreadth.

Texas law seems to me to meet that test. It proscribes only conduct that has six characteristics. What is made unlawful is:

1. A communication with another person
2. By telephone or in writing
3. In vulgar, profane, obscene, or indecent language, or in a coarse and offensive manner
4. That intentionally, knowingly, or recklessly
5. Annoys or alarms
6. The recipient.

In essence my brethren find that the statute is vague because it does not define two plain English words that are used in their ordinary sense. It is not necessary for the lawmaker, I submit, to define words in common usage if the statute uses them according to their everyday meaning, not as terms of art. We daily enforce federal statutes using such words as "willfully sets fire to"[1], "harbors or conceals"[2], "interferes with any person"[3], "false information"[4], and a host of other like terms. Merely thumbing through the United States Code, we find that Congress uses, as indeed it should, short words of Anglo-Saxon origin that are not defined simply because there is no need for definition unless Congress intends to expand or to restrict their ordinary meaning. Indeed, two federal statutes that pro-

1. 18 U.S.C. § 32 (1976).

2. 18 U.S.C. § 792 (1976).

3. 18 U.S.C. § 111 (1976).

4. 18 U.S.C. § 35 (1976).

5. 15 U.S.C. § 1692(d) (Supp. V 1981), part of the federal consumer credit protection laws, provides:

 A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 . . . .

 (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

 . . . .

scribe harassing telephone calls in the District of Columbia, in interstate or foreign communication and in the course of debt collection, themselves use the word "annoy" without further definition to characterize the purpose of the forbidden call.[5] If there is need for a definition of the words that trouble my brethren, any desk-size dictionary will do. The one I use, Webster's Seventh New Collegiate, has explication enough:

²alarm *also* alarum *vt* **1 :** to arouse to a sense of danger **2 :** to strike with fear **:** TERRIFY **3 :** DISTURB, EXCITE

an·noy \ə-'nȯi\ *vb* [ME *anoien,* fr. OF *enuier,* fr. LL *inodiare* to make loathsome, fr. L *in* + *odium* hatred — more at ODIUM] *vt* **1 :** to disturb or irritate esp. by repeated acts **:** VEX **2 :** HARASS, MOLEST ~ *vi* **:** to be a source of annoyance — an·noy·er *n* SYN VEX, IRK, BOTHER: ANNOY implies a wearing on the nerves by persistent petty unpleasantness; VEX implies greater provocation and stronger disturbance and usu. connotes anger but sometimes perplexity or anxiety; IRK stresses difficulty in enduring and resulting weariness or impatience of spirit; BOTHER may imply either a bewildering or upsetting but always suggests interference with comfort or peace of mind syn see in addition WORRY

We ought to praise the legislators who write so clearly and concisely, in terms that can be readily understood by those untutored in legal intricacies. We certainly should not condemn as unconstitutional their lack of complexity and convolution.

My brethren declare the statute invalid "in the absence of any judicial clarification." While the Texas Court of Criminal Appeals has not found it necessary to elaborate on the statutory language, it has repeatedly held that the words "annoy" and "alarm" in this statute and its predecessor

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to *annoy,* abuse, or harass any person at the called number. (Emphasis added.)

 * * * * * *

47 U.S.C. § 223 (1976) states:

Whoever—

(1) in the District of Columbia or in interstate or foreign communication by means of telephone—

 (A) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent;

 (B) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to *annoy,* abuse, threaten, or harass any person at the called number;

. . . .

shall be fined not more than $500 or imprisoned not more than six months, or both. (Emphasis added.)

are not vague and standardless because they do not "fail to give to a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Collection Consultants, Inc. v. State,* 556 S.W.2d 787, 794 (Tex.Cr.App.1977) (on rehearing). *See Kramer v. State,* 605 S.W.2d 861, 866 (Tex.Cr.App.1980) (on rehearing en banc); *LeBlanc v. State,* 441 S.W.2d 847, 851 (Tex.Cr.App.1969). I think that court is correct.

Our course is not determined by *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). The vagueness in the Cincinnati ordinance did not result from the use of the word "annoy" but from the imprecision of the phrase in which it appeared, "conduct themselves *in a manner annoying to persons passing by....*" There is a difference between conduct that *might* annoy some person who happens to walk by a given spot, a person who might be so young or old as to be unusually sensitive, devout, or fastidious, and a communication using vulgar, profane, obscene, or indecent language that is intentionally designed to annoy a particular person. If the phrase used by the City of Cincinnati is juxtaposed with the one used by the State of Texas, a marked difference in specificity is evident.

It *might* "annoy" some persons passing by if I stood on a street corner and read the first and the fifth amendments to the Constitution in a normal tone of voice. It is almost impossible to determine what conduct is so inoffensive that it *cannot* annoy anyone who may pass by, whatever his or her age or sensibility. Moreover, the state of the communicator's mind is relevant. The Texas statute proscribes only annoying a specific person when using vulgar, profane, obscene, or indecent language or a coarse and offensive manner of communication purposely or recklessly. This is clear enough to tell the untutored what is forbidden. What is unlawful is not a communication that *might* offend any of the myriad of persons who passes, regardless of the communicator's purpose; the statute limits unlawful conduct to what not only "may" but is also intended to annoy or uttered heedless of its capacity to annoy a particular person.

The Texas statute is, therefore, significantly different from the Cincinnati ordinance: If the communicator knows the recipient, he will be accountable for conduct intended to offend the recipient's known sensibilities. Even if the communicator does not know the recipient (*e.g.,* if he is a crank caller who harasses a victim at a randomly chosen phone number), he will be accountable for conduct that recklessly disregards its effect on the sensibilities of the hypothetical reasonable person. The possibility of arbitrary or discriminatory enforcement is minimal because the statute requires that the state prove not only that the recipient was annoyed or alarmed but also that the communicator intentionally or recklessly caused that perturbation. The focus of the statute on two identifiable parties, and the requirement that the accused's conduct be tailored to evoke a response in the victim or be reckless in its disregard of that impact removes the indefiniteness that was fatal to the ordinance in *Coates.*

Ms. Kramer also attacks the Texas Harassment Statute as facially overbroad. Although my brethren do not find it necessary to reach that issue, I discuss it because it is another basis for the charge of unconstitutionality. Ms. Kramer does not argue that her own conduct was protected. Her argument is merely that the statute proscribes both protected and unprotected speech, and that, because it may possibly permit unconstitutional applications, we should strike it down without reaching the question whether it was unconstitutionally applied in her case. The history, development, and curtailment of the overbreadth doctrine have been widely discussed,[6] and it is not necessary here to retrace the decisional path. A full decade ago in *Broadrick v.*

---

**6.** *See, e.g.,* G. Gunther, Cases and Materials on Constitutional Law 1185 *et seq.* (10th ed. 1982).

*Oklahoma,*[7] the Court introduced the concept of "substantial overbreadth" as a limitation on earlier overbreadth applications and suggested that the function of the facial overbreadth doctrine "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct . . . . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."[8] While *Broadrick* was directed at expressive conduct and not "pure" speech, it has been properly interpreted as requiring caution before even regulation of speech alone is condemned on the sole ground of overbreadth.[9]

While Ms. Kramer was convicted of sending Mrs. Keiser a written message of unde-

niably expressive content,[10] the proscription of her communication was warranted. The state has a compelling interest in regulating talk or writing that has no objective but personal harassment of the recipient. This was an utterance that was no part of any exposition of ideas and no social value as a step to the truth.[11] In this respect, it was like fighting words,[12] or obscenity,[13] or child pornography.[14] A jury could properly find beyond reasonable doubt that the postcard was intended to annoy and to alarm.

It so clearly lies within the power of the legislature to forbid such a writing to a victim thus maliciously and callously selected that I would not sustain Ms. Kramer's attack on the statute on the basis that the law might conceivably be applied to some other person for a constitutionally protected communication when there is no evidence of any instance in which it has been so applied

---

**7.** 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

**8.** *Id.* at 615, 93 S.Ct. at 2917–18, 37 L.Ed.2d at 841–42. *See also Kolender v. Lawson,* —— U.S. ——, —— n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903, 910 n. 8 (1983) (invalidation for overbreadth appropriate if statute reaches substantial constitutionally protected conduct); *id.,* —— U.S. at ——, 103 S.Ct. at 1865, 75 L.Ed.2d at 917 (White, J., dissenting) (substantial overbreadth not established by showing that statute is vague as applied to conduct other than the defendant's); *Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439, 460 (1974) ("[E]ven if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct. . . .' " (citation omitted)).

**9.** For a discussion of the "substantial overbreadth" test, expanding the applicability of the test to the production or distribution of books and films containing visual depictions of child pornography, *see New York v. Ferber,* 458 U.S. 747, 767–73, 102 S.Ct. 3348, 3360–63, 73 L.Ed.2d 1113 (1982). Professor Gunther has labeled *Ferber* an arguable extension of the "substantial overbreadth" test to direct regulation of speech. G. Gunther, Cases and Materials on Constitutional Law and Individual Rights in Constitutional Law 227 (1982 Supp.).
For recent applications of the "substantial overbreadth" doctrine to first amendment questions in this circuit, *see Basiardanes v. City of Galveston,* 682 F.2d 1203, 1217 (5th Cir.

1982) (ordinance zoning adult theaters); *Beckerman v. City of Tupelo,* 664 F.2d 502, 507 (5th Cir.1981) (ordinances regulating parades and use of sound equipment); *Fernandes v. Limmer,* 663 F.2d 619, 633 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982) (airport regulation prohibiting solicitation of funds or distribution of literature without permit); *Johnson v. City of Opelousas,* 658 F.2d 1065, 1072 (5th Cir.1981) (ordinance imposing nighttime curfew on juveniles).

**10.** The court noted that Ms. Kramer knew Mr. Keiser's work schedule and knew that she could prevent Mrs. Keiser from intercepting mail by employing "restricted delivery" postal service, as she had in the past, with letters sent to Mr. Keiser. Instead, in this case she sent a postcard, which was, of course, simply placed in the Keiser mail box. Although the postcard was addressed to Mr. Keiser, the Texas Court of Criminal Appeals held that, because it was addressed to his home, the jury might infer that Ms. Kramer intended Mrs. Keiser to read the message. *Kramer v. State,* 605 S.W.2d at 865.

**11.** *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942).

**12.** *Id.*

**13.** *Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, 1507 (1957).

**14.** *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

and the risk of improper applications appears remote in relation to the statute's legitimate sweep. *Compare United States v. Margiotta,* 688 F.2d 108, 129 (2d Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983) (conduct charged in mail fraud indictment was within power of government to proscribe and application of statute in this case would not deter protected political activities in other contexts). If there be overbreadth, it is insubstantial.

For these reasons, I would reverse the decision below and I, therefore, respectfully dissent.