COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-425-CR

 

 

NIKOLAI IVANOV KARENEV                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








A jury convicted Appellant Nikolai Ivanov Karenev on one
count of harassment.  The trial court
sentenced him to 120 days= confinement in Denton County Jail,
probated for eighteen months, and a $500 fine. 
On appeal, Appellant challenges the constitutionality of section
42.07(a)(7) of the Texas Penal Code, the legal sufficiency of the evidence, and
the jury charge.  Because we hold that
section 42.07(a)(7) is unconstitutionally vague, we reverse the trial court=s judgment and
render judgment of acquittal.

Factual Background

Attorney Elena Karenev filed for divorce from her husband,
Appellant, in October 2004, and Appellant moved out of their residence in
December 2004. Elena testified at Appellant=s trial that
Appellant had left telephone messages after he moved out and had sent her e-mail
messages in March 2005.  In March 2005, Elena
reported the emails to the police.  Based
on their investigation, the police arrested Appellant, and he was charged by
information in April 2005.  An amended
information was filed in the trial court in October 2005.  The amended information charged one count of
harassment based on the telephone messages and one count of harassment based on
Appellant=s Aelectronic
communications@ to Elena. 
Count two elaborates the chargeCAto wit:  sending harassing and/or threatening e-mail
to Elena with the intent to harass, annoy, alarm, abuse, torment, or embarrass
[her.]@  








At trial, the State offered five email messages
sent between March 3 and March 29, 2005, all written in Bulgarian.  The prosecution relied without objection on
translations of the messages provided by Stefanova Helstrom, a woman who was
not a certified translator and who was an acquaintance of Elena.  Helstrom testified without objection that the
telephone calls and the emails were harassment. 
Appellant countered Helstrom=s
translations with the testimony of Tatiana Vassileva Gilbard, a Bulgarian
translator.  Gilbard disagreed with
Helstrom=s
interpretation of some of the language in the emails.  The first email is dated March 23, 2005, and
Helstrom=s
translation provides, 

Elena,

I pray for you every day
and I light up candles in the church.

I hope that it helps you.

 

Nick 

Gilbard did not voice any disagreement with this translation.

The second email is dated March 26, 2005.  Helstrom=s
translation  provides,

Elena Petkova,

If you ask me there is no
purpose to change your passwords...  
Unless you change them every hour it is totally useless.

 

I thought you might want
to know...

 

Rest in peace!

 

Nick Karenev








Elena testified that Petkova was her maiden name
and that she used it as well as Karenev and Kareneva.  Appellant testified without contradiction
that he had emailed Elena about the passwords because she had called him and
asked if she needed to change her password. 
He told her that she did not, and she asked him to put it in writing, so
he sent the email.  He testified that
until March 15, they communicated regularly by email.  He also testified that Elena asked him questions
about the computer system at her office because he was the administrator and
had set up the system.  Elena did not
contradict his explanation.

Helstrom translated the final line in the March
26 email as ARest in peace.@  She testified that the line was meant as
irony.  Gilbard testified that the phrase
in Bulgarian was AHaide ostani si s zdrave.@  She explained that in Bulgarian, Azdrave@ means Ahealth.@  Literally translated, the phrase means Aremain
in good health.@ 
Gilbard testified that the phrase did not mean Arest in
peace.@  We note that the Bulgarian toast, ANa
zdrave,@ means Ato your
health.@[1]  The Bulgarian word for Apeace@ is Amir,@ not Azdrave.@[2]  AZdrave@ means Ahealth.@[3]








The remaining three emails appear to be dated March 26,
March 28, and March 29, 2005.  They are
longer and appear to reveal anger.  In
those emails, as translated, Appellant predicted Elena=s future:  he would raise their child, Elena=s mother would be
paralyzed, and Elena would be in either a mental hospital or prison.  He called her Anot even a regular
slut and whore, . . . something much scarier,@  Aa pathological
li[ar], a dirty whore, a filthy thief, a rotten user, a sick nymphomaniac, a
mental case, and a devil=s work.@  He told her, AIt is about time
to pay for all of your filthy deeds which you have committed during your
pathetic life!@ 

At trial, Appellant explained that while in Bulgaria, he
had run into fortunetellers that Elena had relied on and that they had asked
him to relay the message regarding her future. 
He testified that in the email he was doing as they had requested.

The emails concerned the divorce, and, at least on
occasion, were responses to emails sent by Elena.  In the emails, Appellant urged her to reach
an agreement with him about the terms of the divorce to prevent their entire
estate going to the attorneys.  

Constitutionality of Penal Code
Section 42.07(a)(7)

In his second point, Appellant contends that section
42.07(a)(7) of the Texas Penal Code is unconstitutionally vague so that a
person of ordinary circumstances cannot tell what is prohibited and what is
not.  This court has previously
explained, 








There are two types of challenges
to the constitutionality of a statute: the statute is unconstitutional as
applied to the defendant, or the statute is unconstitutional on its face.  The constitutionality of a statute as applied
must be raised in the trial court in order to preserve error.  Appellant was not required, however, to raise
in the trial court a constitutional challenge that the statute is facially
invalid, because a defendant may raise a constitutional challenge to the facial
validity of a statute for the first time on appeal.

 

This rule is limited to challenges to the constitutionality of the
statute under which a defendant was actually convicted.  The rationale for the Rabb exception
to the general rule that failure to object at trial waives any right to
complain is because if the statute giving rise to a prosecution is
unconstitutional, it is void from its inception, is no law, confers no rights,
bestows no power on anyone, and justifies no act performed under it.  Requiring the defendant to preserve such a
challenge in the court below on pain of waiver could result in a criminal
conviction based upon an unconstitutional statute.  Because a statute criminalizing the
defendant's conduct is necessary to the jurisdiction of the convicting court,
the Rabb rule is properly applied when the defendant challenges the
constitutionality of the specific statute he is charged with violating.[4]


Appellant cites to
no place in the record where he challenged the constitutionality of section
42.07(a)(7) before raising the issue on appeal, and we have found none.  We therefore address only the issue of facial
constitutionality of the statute. 








Because he relies
on the standard discussed in Kramer v. Price,[5]
which deals with the interplay of the vagueness doctrine and the First
Amendment guarantees, and on Article I, Section 8 of the Texas Constitution,[6] we construe Appellant=s vagueness
argument as including a complaint that the statute offends the First Amendment
protection of free speech.  The State
argues that the First Amendment is not implicated in this case because
harassment is not protected speech contemplated by the First Amendment.  The problem with the State=s argument is that
it is the challenged statute itself that defines harassment.  Unless the harassment statute is sufficiently
clear to withstand constitutional scrutiny, no unlawful harassment exists that
would be excluded from First Amendment protection. 








As the Texas Court
of Criminal Appeals has provided, AIt is axiomatic
that vague laws offend the Federal Constitution by allowing arbitrary and
discriminatory enforcement, by failing to provide fair warning, and by
inhibiting the exercise of First Amendment freedoms.@[7]  Additionally, in Long v. State,[8]
a case in which the Texas Court of Criminal Appeals struck down the stalking
statute, the court had this to say:

It is well‑established that
criminal laws must be sufficiently clear in at least three respects.  First, a person of ordinary intelligence must
be given a reasonable opportunity to know what is prohibited.  Second, the law must establish determinate
guidelines for law enforcement.  Finally,
where First Amendment freedoms are implicated, the law must be sufficiently
definite to avoid chilling protected expression.  AWhen a statute is capable of reaching First Amendment
freedoms, the doctrine of vagueness >demands a greater degree of specificity than in other
contexts.=@ Greater specificity is required to
preserve adequately the right of free expression because A[u]ncertain meanings inevitably
lead citizens to steer far wider of the unlawful zone than if the boundaries of
the forbidden areas were clearly marked.@  Moreover, when a
vagueness challenge involves First Amendment considerations, a criminal law may
be held facially invalid even though it may not be unconstitutional as applied
to the defendant's conduct.[9]

 

The Fifth Circuit
discussed the vagueness doctrine in Kramer, the case in which it struck
down the pre-1983 version to the current harassment statute:

Although the
[vagueness] doctrine focuses both on actual notice to citizens and arbitrary
enforcement, we have recognized recently that the more important aspect of the
vagueness doctrine Ais not actual notice, but the other
principal element of the doctrineCthe requirement
that a legislature establish minimal guidelines to govern law enforcement.@  Where the legislature fails to provide such
minimal guidelines, a criminal statute may permit Aa standardless
sweep [that] allows policemen, prosecutors, and juries to pursue their personal
predilections.@[10]








AWhen a statute is
capable of reaching First Amendment freedoms,@ the Kramer
court continued, Athe doctrine of vagueness >demands a greater
degree of specificity than in other contexts.=@[11]

Appellant
challenges the constitutionality of section 42.07(a)(7) of the Texas Penal
Code, which provides,

 (a) A person commits an offense if, with
intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

 

. . . 

 

(7) sends repeated electronic communications in a manner reasonably
likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[12]

In Long,
the Texas Court of Criminal Appeals examined the Fifth Circuit=s analysis of the
pre-1983 harassment statute in Kramer:

In Kramer, the Fifth Circuit
addressed the constitutionality of 
Texas' pre‑1983 harassment statute.  The pre‑1983 statute provided in part:

 

(a) A person commits an offense if
he intentionally:

 

(1) communicates by telephone or in
writing in vulgar, profane, obscene, or indecent language or in a coarse and
offensive manner and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient[.]








 

While the court declined to address
the question of overbreadth, it nevertheless indicated that First Amendment
considerations were intertwined with the vagueness issue.  Relying upon Coates v. Cincinnati, the
Fifth Circuit held that the words Aannoy@ and Aalarm@ were inherently vague and that
Texas courts had not construed the terms to lessen their vagueness.  The Fifth Circuit also criticized the statute
for failing to specify whose sensitivities were offended.  The court further explained that a statute's
vagueness is not lessened by making the conduct depend upon each complainant's
sensitivity. Finally, the court held that the intent requirement did not save
the statute because the underlying conduct was still vague.  Consequently, the Fifth Circuit held the
statute to be facially unconstitutional due to vagueness.  We subsequently endorsed  Kramer in holding the pre‑1983
harassment statute to be unconstitutional.[13]

 

The May
court also analyzed the harassment statute as it existed when the Fifth Circuit
held it unconstitutionally vague and held Athat the inherent
vagueness of the statute as it then existed, in attempting to define what
annoys and alarms people, and its failure to specify whose sensitivities are
relevant, causes it to be unconstitutionally vague.@[14] 

 In analyzing the impact of the Kramer
decision on the 1993 Texas stalking statute, which tracks verbatim subsection (a) of the Texas harassment statute,
the Long court opined,








If (a)(7)(A) is viewed in
isolation, it appears to suffer the same flaws denounced by Kramer.  The words Aannoy@ and Aalarm@ remain in the statute although
they are now joined by the words Aharass,@ Aabuse,@ Atorment,@ and Aembarrass.@ 
But, all these terms are joined with a disjunctive Aor,@ and thus do nothing to limit the
vagueness originally generated by Aannoy@ and Aalarm.@  
Moreover, the additional terms are themselves susceptible to
uncertainties of meaning.[15]

 

The Long
court also considered whether the term Areasonably likely@ created a Areasonable person@ standard and
thereby cured the Kramer court=s criticism of the
statute for failing to specify whose sensitivities were offended and reiterated
the Kramer court=s caution that Aa statute's
vagueness is not lessened by making the conduct depend upon each complainant's
sensitivity.@[16]  The Long court concluded, 

A reasonable
person standard, even if present, probably would not, by itself, be enough to
save (a)(7)(A) from a constitutional challenge. 
Even with an objective standard, vagueness may still inhere in the
expansive nature of the conduct described. 
Moreover, even if a reasonable person standard clarified the law
sufficiently to avoid a vagueness challenge, it would run into a serious
overbreadth problem.  The First Amendment
does not permit the outlawing of conduct merely because the speaker intends to
annoy the listener and a reasonable person would in fact be annoyed. Many
legitimate political protests, for example, contain both of these elements.[17]








The Long
court ultimately held the 1993 stalking provision unconstitutionally vague on
its face.[18]


As the State
points out, the harassment statute has since been amended to correct some of
the deficiencies recognized by the Long court.[19]  Section 42.07 provides in sections (a)(1)
through (6),

 (a) A person commits an offense
if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another,
he:

(1) initiates communication by
telephone, in writing, or by electronic communication and in the course of the
communication makes a comment, request, suggestion, or proposal that is
obscene;

 

(2) threatens, by telephone, in
writing, or by electronic communication, in a manner reasonably likely to alarm
the person receiving the threat, to inflict bodily injury on the person or to
commit a felony against the person, a member of his family or household, or his
property;

 

(3) conveys, in a manner reasonably
likely to alarm the person receiving the report, a false report, which is known
by the conveyor to be false, that another person has suffered death or serious
bodily injury;

 

(4) causes the telephone of another
to ring repeatedly or makes repeated telephone communications anonymously or in
a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass,
or offend another;

 








(5) makes a telephone call and
intentionally fails to hang up or disengage the connection;

 

(6) knowingly permits a telephone
under the person's control to be used by another to commit an offense under
this section.[20]


 

The legislature
has cured most of the deficiencies in the statute that was held to be
infirm.  Section (a)(7), however,
exhibits the same infirmities as the old statute that was held
unconstitutional.  Section (a)(7) provides,  

(a) A person commits an offense if,
with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

 

(7) sends repeated electronic
communications in a manner reasonably likely to harass, annoy, alarm, abuse,
torment, embarrass, or offend another.[21]

 

This provision
suffers the same flaws as the old statute: it employs,  in the disjunctive, a series of vague terms
that are themselves susceptible to uncertainties of meaning.   

The Long
court discussed ways the legislature could correct the flaws in the old statute
by comparing the Texas statute to those of other states whose statutes had
survived constitutional challenge:








All of the statutes described above
contain additional limiting elements not found in the Texas criminal
statute.  Many limit the vagueness of the
conduct described by linking it to more specific conduct through a continuity
of purpose requirement.  Others tie the
conduct together with a more specific mental state than a mere intent to annoy,
such as intent to place in fear of bodily injury, or with a more intense mental
state, such as intent to frighten.  In
addition to creating greater specificity, these kinds of limiting elements help
to avoid a vagueness problem by taking the First Amendment out of the
picture.  Conduct which alone would
constitute protected activities may be actionable if it is part of a common
plan that includes activity that is clearly unprotected.  And, while conduct does not lose First
Amendment protection merely because the actor intends to annoy the recipient,
such conduct is much less likely to enjoy protection where the actor intends to
Afrighten@ the recipient, and such conduct is
unlikely to enjoy any protection where the actor intends to place the recipient
in fear of death or bodily injury.  If
the First Amendment can be removed from the arena, a stalking statute can be
evaluated under more deferential due process standards, and is thus more likely
to survive scrutiny. 

 

The threat requirement in the present statute, however, does not
successfully remove the First Amendment from the purview of the offense.  In the absence of any nexus between the
threat requirement and the conduct requirement, there is a real likelihood that
the statute could chill the exercise of protected First Amendment
expression.  If the threat is the first
predicate act, then any future conduct that is annoying (or harassing,
alarming, etc.) could trigger the application of the statuteCso long as both
predicate acts were directed at the same personCeven though the
second predicate act consists entirely of protected First Amendment
activity.  This situation in essence
holds protected activity hostage once a person engages in one proscribed act
that is not protected.  For example, a
political protester who crosses the line and makes a threat might find himself
forever barred from engaging in peaceful, legitimate expression for fear of
subjecting himself to punishment for stalking. 
The legislature may legitimately punish the threat, but it should not be
permitted to hold someone's First Amendment rights forever hostage after he
makes such a threat.[22]








While the
legislature did correct the specific defects the Texas Court of Criminal
Appeals addressed in Long, when the legislature sought to modernize the
statute by including electronic communications, it used the language, and
consequently repeated the infirmities, of the old statute.  The new section 42.07(a)(7) corrected the Kramer/May
defects, but did not adequately correct the deficiencies so as to bring section
42.07(a)(7) into compliance with constitutional mandates.  

Thus, in
accordance with the Kramer court=s analysis and
that of the Long court, we hold that the portions of the harassment
statute making it an offense to send electronic communications that annoy or
alarm are unconstitutionally vague. 
Additionally, because the statute still does not establish a clear
standard for whose sensibilities must be offended, it is unconstitutionally
vague in that the standard of conduct it specifies is dependent on each
complainant's sensitivity.[23]  Also, the intent to Aharass, annoy,
alarm, abuse, torment, or embarrass@ set out in
section 42.07(a) still Ado[es] nothing to limit the vagueness
originally generated by >annoy= and >alarm,=@[24] and the
additional terms are themselves still Asusceptible to
uncertainties of meaning.@[25]








We also note that
although the statute requires Arepeated@ electronic
communications, it does not define the term repeated, nor does it
indicate the requisite frequency of the repeated communications.  The Random House Webster=s Unabridged
Dictionary defines repeated as Adone, made, or
said again and again.@[26]  Again and again indicates at least
three acts.  Does this mean that if a
person sends three annoying emails over a five-year period, the person is
guilty of the offense of harassment?  Can
we tell from the statute? The jury charge in this case does nothing to clarify
the term because the application paragraph required that the jury find that
Appellant sent email, not repeated email, and nowhere in the charge is the term
repeated defined. 

For all of these
reasons, we hold that the statute is unconstitutionally vague.  An unconstitutionally vague statute is
void.  As the Texas Court of Criminal
Appeals instructs us,








Under our system of government, the
legislature has the power to pass any and all laws which to it may seem proper,
so long as same violate no provisions of our State or Federal
Constitutions.  A law must be
sufficiently definite that its terms and provisions may be known, understood,
and applied.  An Act of the legislature
which violates either of said Constitutions, or an Act that is so vague,
indefinite, and uncertain as to be incapable of being understood, is void and
unenforceable.  A void law affords no
basis for a criminal prosecution.[27]

 

Or, more vividly, 

 

Ex parte Halsted held that an act of the
Legislature which violates either of said constitutions is void and
unenforceable.  And Ex parte Bockhorn
held an unconstitutional statute is void from its inception, citing, inter
alia, Cooley's work on Constitution Limitations, which used the language Awhen a statute is adjudged to be
unconstitutional, it is as if it had never been passed.  Rights cannot be built up under it.@ 
Indicating that an unconstitutional statute is stillborn, Bockhorn
quoted with approval from Boales v. Ferguson to the effect[,] AThe Court did not annul the statute
for it was already lifeless.  It had been
fatally smitten by the Constitution at its birth.@ 
Bockhorn also quoted from Seneca Min. Co. v. Secretary of
State that an unconstitutional statute Ais of no more force or validity than a piece of blank
paper, and is utterly void.@[28]

 

Because we hold
that section 42.07(a)(7) is unconstitutionally vague, we also hold that it is
void.  Accordingly, we sustain Appellant=s second point and
do not reach his remaining points.[29]  Having sustained Appellant=s second point, we
reverse the trial court=s judgment and render judgment of
acquittal.[30]

 

LEE ANN DAUPHINOT

JUSTICE

 








PANEL B:    DAUPHINOT,
GARDNER, and MCCOY, JJ.

MCCOY, J. concurs
without opinion.

PUBLISH

DELIVERED: April
3, 2008











[1]SA English-Bulgarian Dictionary, http://sa.dir.bg/
(last visited Mar. 28, 2008).  





[2]Bulgarian‑English,
English‑Bulgarian Dictionary 74 (Ivan Tchomakov ed., Hippocrene Books 2006).





[3]Id. at 49.





[4]Barnett v. State, 201 S.W.3d 231, 232-33 (Tex. App.CFort Worth 2006, no pet.) (citations omitted).





[5]712 F.2d 174, 176-77 (5th Cir.), vacated on reh=g,
716 F.2d 284 (1983), trial court
aff=d after statute repealed, 723 F.2d 1164 (1984).





[6]Tex. Const. art. I, ' 8.





[7]May v. State,
765 S.W.2d 438, 439 (Tex. Crim. App. 1989) (citations omitted).





[8]931 S.W.2d 285 (Tex. Crim. App. 1996).





[9]Id. at 287
(citations omitted) (alteration in original).





[10]Kramer, 712
F.2d at 176-77 (citations omitted).





[11]Id. at 177
(citations omitted).





[12]Tex. Penal Code Ann. ' 42.07(a)(7) (Vernon 2003).





[13]Long, 931
S.W.2d at 287-88 (citations omitted).





[14]May, 765
S.W.2d at 440 (emphasis added).





[15]Long, 931
S.W.2d at 289 (citations omitted).





[16]Id. at 288,
289-290.





[17]Id. at 297
n.4 (citations omitted).





[18]Id. at 297.





[19]Id. at 288; DeWillis
v. State, 951 S.W.2d 212, 215 (Tex. App.CHouston [14th Dist.] 1997, no writ).





[20]Tex. Penal Code Ann. ' 42.07 (Vernon 2003).





[21]Id. '
42.07(a)(7).





[22]Long, 931
S.W.2d at 293-94 (footnotes omitted).





[23]See Kramer,
712 F.2d at 177.





[24]See Long,
931 S.W.2d at 289.





[25]See id.





[26]Random House Webster=s Unabridged Dictionary 1633 (2d ed. 1999).





[27]Ex parte Halsted, 147 Tex. Crim. 453, 182 S.W.2d 479, 482 (1944).





[28]Reyes v. State,
753 S.W.2d 382, 383 (Tex. Crim. App. 1988) (citations omitted).





[29]See Tex. R. App. P. 47.1.





[30]See Shannon v. State, 129 S.W.3d 670, 673
(Tex. App.CHouston [1st Dist.] 2004,
pet. ref=d).