

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-05-425-CR**

NIKOLAI IVANOV KARENEV  APPELLANT

V.

THE STATE OF TEXAS  STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

## OPINION

------------

A jury convicted Appellant Nikolai Ivanov Karenev on one count of harassment. The trial court sentenced him to 120 days' confinement in Denton County Jail, probated for eighteen months, and a $500 fine. On appeal, Appellant challenges the constitutionality of section 42.07(a)(7) of the Texas Penal Code, the legal sufficiency of the evidence, and the jury charge. Because

we hold that section 42.07(a)(7) is unconstitutionally vague, we reverse the trial court's judgment and render judgment of acquittal.

## FACTUAL BACKGROUND

Attorney Elena Karenev filed for divorce from her husband, Appellant, in October 2004, and Appellant moved out of their residence in December 2004. Elena testified at Appellant's trial that Appellant had left telephone messages after he moved out and had sent her e-mail messages in March 2005. In March 2005, Elena reported the emails to the police. Based on their investigation, the police arrested Appellant, and he was charged by information in April 2005. An amended information was filed in the trial court in October 2005. The amended information charged one count of harassment based on the telephone messages and one count of harassment based on Appellant's "electronic communications" to Elena. Count two elaborates the charge—"to wit: sending harassing and/or threatening e-mail to Elena with the intent to harass, annoy, alarm, abuse, torment, or embarrass [her.]"

At trial, the State offered five email messages sent between March 3 and March 29, 2005, all written in Bulgarian. The prosecution relied without objection on translations of the messages provided by Stefanova Helstrom, a woman who was not a certified translator and who was an acquaintance of Elena. Helstrom testified without objection that the telephone calls and the

2

emails were harassment. Appellant countered Helstrom's translations with the testimony of Tatiana Vassileva Gilbard, a Bulgarian translator. Gilbard disagreed with Helstrom's interpretation of some of the language in the emails. The first email is dated March 23, 2005, and Helstrom's translation provides,

Elena,

I pray for you every day and I light up candles in the church.
I hope that it helps you.

Nick

Gilbard did not voice any disagreement with this translation.

The second email is dated March 26, 2005. Helstrom's translation provides,

Elena Petkova,

If you ask me there is no purpose to change your passwords...
Unless you change them every hour it is totally useless.

I thought you might want to know...

Rest in peace!

Nick Karenev

Elena testified that Petkova was her maiden name and that she used it as well as Karenev and Kareneva. Appellant testified without contradiction that he had emailed Elena about the passwords because she had called him and asked if she needed to change her password. He told her that she did not, and

3

she asked him to put it in writing, so he sent the email. He testified that until March 15, they communicated regularly by email. He also testified that Elena asked him questions about the computer system at her office because he was the administrator and had set up the system. Elena did not contradict his explanation.

Helstrom translated the final line in the March 26 email as "Rest in peace." She testified that the line was meant as irony. Gilbard testified that the phrase in Bulgarian was "Haide ostani si s zdrave." She explained that in Bulgarian, "zdrave" means "health." Literally translated, the phrase means "remain in good health." Gilbard testified that the phrase did not mean "rest in peace." We note that the Bulgarian toast, "Na zdrave," means "to your health."[1] The Bulgarian word for "peace" is "mir," not "zdrave."[2] "Zdrave" means "health."[3]

The remaining three emails appear to be dated March 26, March 28, and March 29, 2005. They are longer and appear to reveal anger. In those emails, as translated, Appellant predicted Elena's future: he would raise their child,

---

[1] SA English-Bulgarian Dictionary, http://sa.dir.bg/ (last visited Mar. 28, 2008).

[2] BULGARIAN-ENGLISH, ENGLISH-BULGARIAN DICTIONARY 74 (Ivan Tchomakov ed., Hippocrene Books 2006).

[3] *Id.* at 49.

4

Elena's mother would be paralyzed, and Elena would be in either a mental hospital or prison. He called her "not even a regular slut and whore, . . . something much scarier," "a pathological li[ar], a dirty whore, a filthy thief, a rotten user, a sick nymphomaniac, a mental case, and a devil's work." He told her, "It is about time to pay for all of your filthy deeds which you have committed during your pathetic life!"

At trial, Appellant explained that while in Bulgaria, he had run into fortunetellers that Elena had relied on and that they had asked him to relay the message regarding her future. He testified that in the email he was doing as they had requested.

The emails concerned the divorce, and, at least on occasion, were responses to emails sent by Elena. In the emails, Appellant urged her to reach an agreement with him about the terms of the divorce to prevent their entire estate going to the attorneys.

### CONSTITUTIONALITY OF PENAL CODE SECTION 42.07(a)(7)

In his second point, Appellant contends that section 42.07(a)(7) of the Texas Penal Code is unconstitutionally vague so that a person of ordinary circumstances cannot tell what is prohibited and what is not. This court has previously explained,

5

There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. The constitutionality of a statute as applied must be raised in the trial court in order to preserve error. Appellant was not required, however, to raise in the trial court a constitutional challenge that the statute is facially invalid, because a defendant may raise a constitutional challenge to the facial validity of a statute for the first time on appeal.

This rule is limited to challenges to the constitutionality of the statute under which a defendant was actually convicted. The rationale for the *Rabb* exception to the general rule that failure to object at trial waives any right to complain is because if the statute giving rise to a prosecution is unconstitutional, it is void from its inception, is no law, confers no rights, bestows no power on anyone, and justifies no act performed under it. Requiring the defendant to preserve such a challenge in the court below on pain of waiver could result in a criminal conviction based upon an unconstitutional statute. Because a statute criminalizing the defendant's conduct is necessary to the jurisdiction of the convicting court, the *Rabb* rule is properly applied when the defendant challenges the constitutionality of the specific statute he is charged with violating.[4]

Appellant cites to no place in the record where he challenged the constitutionality of section 42.07(a)(7) before raising the issue on appeal, and we have found none. We therefore address only the issue of facial constitutionality of the statute.

---

[4] *Barnett v. State*, 201 S.W.3d 231, 232-33 (Tex. App.—Fort Worth 2006, no pet.) (citations omitted).

Because he relies on the standard discussed in *Kramer v. Price*,[5] which deals with the interplay of the vagueness doctrine and the First Amendment guarantees, and on Article I, Section 8 of the Texas Constitution,[6] we construe Appellant's vagueness argument as including a complaint that the statute offends the First Amendment protection of free speech. The State argues that the First Amendment is not implicated in this case because harassment is not protected speech contemplated by the First Amendment. The problem with the State's argument is that it is the challenged statute itself that defines harassment. Unless the harassment statute is sufficiently clear to withstand constitutional scrutiny, no unlawful harassment exists that would be excluded from First Amendment protection.

As the Texas Court of Criminal Appeals has provided, "It is axiomatic that vague laws offend the Federal Constitution by allowing arbitrary and discriminatory enforcement, by failing to provide fair warning, and by inhibiting the exercise of First Amendment freedoms."[7] Additionally, in *Long v. State*,[8]

---

[5] 712 F.2d 174, 176-77 (5th Cir.), *vacated on reh'g,* 716 F.2d 284 (1983), *trial court aff'd after statute repealed*, 723 F.2d 1164 (1984).

[6] TEX. CONST. art. I, § 8.

[7] *May v. State*, 765 S.W.2d 438, 439 (Tex. Crim. App. 1989) (citations omitted).

[8] 931 S.W.2d 285 (Tex. Crim. App. 1996).

7

a case in which the Texas Court of Criminal Appeals struck down the stalking

statute, the court had this to say:

> It is well-established that criminal laws must be sufficiently clear in at least three respects. First, a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited. Second, the law must establish determinate guidelines for law enforcement. Finally, where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. "When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness 'demands a greater degree of specificity than in other contexts.'" Greater specificity is required to preserve adequately the right of free expression because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." Moreover, when a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct.[9]

The Fifth Circuit discussed the vagueness doctrine in *Kramer*, the case in

which it struck down the pre-1983 version to the current harassment statute:

> Although the [vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."[10]

---

[9] *Id.* at 287 (citations omitted) (alteration in original).

[10] *Kramer*, 712 F.2d at 176-77 (citations omitted).

"When a statute is capable of reaching First Amendment freedoms," the *Kramer* court continued, "the doctrine of vagueness 'demands a greater degree of specificity than in other contexts.'"[11]

Appellant challenges the constitutionality of section 42.07(a)(7) of the Texas Penal Code, which provides,

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:
>
> . . .
>
> (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[12]

In *Long*, the Texas Court of Criminal Appeals examined the Fifth Circuit's analysis of the pre-1983 harassment statute in *Kramer*:

> In *Kramer*, the Fifth Circuit addressed the constitutionality of Texas' pre-1983 harassment statute. The pre-1983 statute provided in part:
>
> (a) A person commits an offense if he intentionally:
>
> (1) communicates by telephone or in writing in vulgar, profane, obscene, or indecent language or in a coarse and offensive manner and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient[.]

---

[11] ▲ *Id.* at 177 (citations omitted).

[12] ▲ TEX. PENAL CODE ANN. § 42.07(a)(7) (Vernon 2003).

While the court declined to address the question of overbreadth, it nevertheless indicated that First Amendment considerations were intertwined with the vagueness issue. Relying upon *Coates v. Cincinnati*, the Fifth Circuit held that the words "annoy" and "alarm" were inherently vague and that Texas courts had not construed the terms to lessen their vagueness. The Fifth Circuit also criticized the statute for failing to specify whose sensitivities were offended. The court further explained that a statute's vagueness is not lessened by making the conduct depend upon each complainant's sensitivity. Finally, the court held that the intent requirement did not save the statute because the underlying conduct was still vague. Consequently, the Fifth Circuit held the statute to be facially unconstitutional due to vagueness. We subsequently endorsed *Kramer* in holding the pre-1983 harassment statute to be unconstitutional.[13]

The *May* court also analyzed the harassment statute as it existed when the Fifth Circuit held it unconstitutionally vague and held "that the inherent vagueness of the statute as it then existed, *in attempting to define what annoys and alarms people, and its failure to specify whose sensitivities are relevant,* causes it to be unconstitutionally vague."[14]

In analyzing the impact of the *Kramer* decision on the 1993 Texas stalking statute, which tracks verbatim subsection (a) of the Texas harassment statute, the *Long* court opined,

If (a)(7)(A) is viewed in isolation, it appears to suffer the same

---

[13] *Long*, 931 S.W.2d at 287-88 (citations omitted).

[14] *May*, 765 S.W.2d at 440 (emphasis added).

flaws denounced by *Kramer*. The words "annoy" and "alarm" remain in the statute although they are now joined by the words "harass," "abuse," "torment," and "embarrass." But, all these terms are joined with a disjunctive "or," and thus do nothing to limit the vagueness originally generated by "annoy" and "alarm." Moreover, the additional terms are themselves susceptible to uncertainties of meaning.[15]

The *Long* court also considered whether the term "reasonably likely" created a "reasonable person" standard and thereby cured the *Kramer* court's criticism of the statute for failing to specify whose sensitivities were offended and reiterated the *Kramer* court's caution that "a statute's vagueness is not lessened by making the conduct depend upon each complainant's sensitivity."[16] The *Long* court concluded,

> A reasonable person standard, even if present, probably would not, by itself, be enough to save (a)(7)(A) from a constitutional challenge. Even with an objective standard, vagueness may still inhere in the expansive nature of the conduct described. Moreover, even if a reasonable person standard clarified the law sufficiently to avoid a vagueness challenge, it would run into a serious overbreadth problem. The First Amendment does not permit the outlawing of conduct merely because the speaker intends to annoy the listener and a reasonable person would in fact be annoyed. Many legitimate political protests, for example, contain both of these elements.[17]

The *Long* court ultimately held the 1993 stalking provision

---

[15] *Long*, 931 S.W.2d at 289 (citations omitted).

[16] *Id.* at 288, 289-290.

[17] *Id.* at 297 n.4 (citations omitted).

11

unconstitutionally vague on its face.[18]

As the State points out, the harassment statute has since been amended to correct some of the deficiencies recognized by the *Long* court.[19]  Section 42.07 provides in sections (a)(1) through (6),

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:
>
> (1) initiates communication by telephone, in writing, or by electronic communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;
>
> (2) threatens, by telephone, in writing, or by electronic communication, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of his family or household, or his property;
>
> (3) conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;
>
> (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;
>
> (5) makes a telephone call and intentionally fails to hang up

---

[18] *Id.* at 297.

[19] *Id.* at 288; *DeWillis v. State*, 951 S.W.2d 212, 215 (Tex. App.—Houston [14th Dist.] 1997, no writ).

or disengage the connection;

(6) knowingly permits a telephone under the person's control to be used by another to commit an offense under this section.[20]

The legislature has cured most of the deficiencies in the statute that was held to be infirm. Section (a)(7), however, exhibits the same infirmities as the old statute that was held unconstitutional. Section (a)(7) provides,

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[21]

This provision suffers the same flaws as the old statute: it employs, in the disjunctive, a series of vague terms that are themselves susceptible to uncertainties of meaning.

The *Long* court discussed ways the legislature could correct the flaws in the old statute by comparing the Texas statute to those of other states whose statutes had survived constitutional challenge:

All of the statutes described above contain additional limiting elements not found in the Texas criminal statute. Many limit the vagueness of the conduct described by linking it to more specific conduct through a continuity of purpose requirement. Others tie

---

[20] TEX. PENAL CODE ANN. § 42.07 (Vernon 2003).

[21] *Id.* § 42.07(a)(7).

13

the conduct together with a more specific mental state than a mere intent to annoy, such as intent to place in fear of bodily injury, or with a more intense mental state, such as intent to frighten. In addition to creating greater specificity, these kinds of limiting elements help to avoid a vagueness problem by taking the First Amendment out of the picture. Conduct which alone would constitute protected activities may be actionable if it is part of a common plan that includes activity that is clearly unprotected. And, while conduct does not lose First Amendment protection merely because the actor intends to annoy the recipient, such conduct is much less likely to enjoy protection where the actor intends to "frighten" the recipient, and such conduct is unlikely to enjoy any protection where the actor intends to place the recipient in fear of death or bodily injury. If the First Amendment can be removed from the arena, a stalking statute can be evaluated under more deferential due process standards, and is thus more likely to survive scrutiny.

The threat requirement in the present statute, however, does not successfully remove the First Amendment from the purview of the offense. In the absence of any nexus between the threat requirement and the conduct requirement, there is a real likelihood that the statute could chill the exercise of protected First Amendment expression. If the threat is the first predicate act, then any future conduct that is annoying (or harassing, alarming, etc.) could trigger the application of the statute—so long as both predicate acts were directed at the same person—even though the second predicate act consists entirely of protected First Amendment activity. This situation in essence holds protected activity hostage once a person engages in one proscribed act that is not protected. For example, a political protester who crosses the line and makes a threat might find himself forever barred from engaging in peaceful, legitimate expression for fear of subjecting himself to punishment for stalking. The legislature may legitimately punish the threat, but it should not be permitted to hold someone's First Amendment rights forever hostage after he makes such a threat.[22]

---

[22] *Long,* 931 S.W.2d at 293-94 (footnotes omitted).

While the legislature did correct the specific defects the Texas Court of Criminal Appeals addressed in *Long*, when the legislature sought to modernize the statute by including electronic communications, it used the language, and consequently repeated the infirmities, of the old statute. The new section 42.07(a)(7) corrected the *Kramer/May* defects, but did not adequately correct the deficiencies so as to bring section 42.07(a)(7) into compliance with constitutional mandates.

Thus, in accordance with the *Kramer* court's analysis and that of the *Long* court, we hold that the portions of the harassment statute making it an offense to send electronic communications that annoy or alarm are unconstitutionally vague. Additionally, because the statute still does not establish a clear standard for whose sensibilities must be offended, it is unconstitutionally vague in that the standard of conduct it specifies is dependent on each complainant's sensitivity.[23] Also, the intent to "harass, annoy, alarm, abuse, torment, or embarrass" set out in section 42.07(a) still "do[es] nothing to limit the vagueness originally generated by 'annoy' and 'alarm,'"[24] and the additional terms are themselves still "susceptible to uncertainties of meaning."[25]

---

[23] *See Kramer*, 712 F.2d at 177.

[24] *See Long*, 931 S.W.2d at 289.

[25] *See id.*

We also note that although the statute requires "repeated" electronic communications, it does not define the term *repeated*, nor does it indicate the requisite frequency of the repeated communications. The *Random House Webster's Unabridged Dictionary* defines *repeated* as "done, made, or said again and again."[26] *Again and again* indicates at least three acts. Does this mean that if a person sends three annoying emails over a five-year period, the person is guilty of the offense of harassment? Can we tell from the statute? The jury charge in this case does nothing to clarify the term because the application paragraph required that the jury find that Appellant sent email, not repeated email, and nowhere in the charge is the term *repeated* defined.

For all of these reasons, we hold that the statute is unconstitutionally vague. An unconstitutionally vague statute is void. As the Texas Court of Criminal Appeals instructs us,

> Under our system of government, the legislature has the power to pass any and all laws which to it may seem proper, so long as same violate no provisions of our State or Federal Constitutions. A law must be sufficiently definite that its terms and provisions may be known, understood, and applied. An Act of the legislature which violates either of said Constitutions, or an Act that is so vague, indefinite, and uncertain as to be incapable of being understood, is void and unenforceable. A void law affords no

---

[26] RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1633 (2d ed. 1999).

basis for a criminal prosecution.[27]

Or, more vividly,

> *Ex parte Halsted* held that an act of the Legislature which violates either of said constitutions is void and unenforceable.  And *Ex parte Bockhorn* held an unconstitutional statute is void from its inception, citing, inter alia, Cooley's work on Constitution Limitations, which used the language "when a statute is adjudged to be unconstitutional, it is as if it had never been passed.  Rights cannot be built up under it."  Indicating that an unconstitutional statute is stillborn, *Bockhorn* quoted with approval from *Boales v. Ferguson* to the effect[,] "The Court did not annul the statute for it was already lifeless.  It had been fatally smitten by the Constitution at its birth." *Bockhorn* also quoted from *Seneca Min. Co. v. Secretary of State* that an unconstitutional statute "is of no more force or validity than a piece of blank paper, and is utterly void."[28]

Because we hold that section 42.07(a)(7) is unconstitutionally vague, we also hold that it is void.  Accordingly, we sustain Appellant's second point and do not reach his remaining points.[29]  Having sustained Appellant's second point, we reverse the trial court's judgment and render judgment of acquittal.[30]

LEE ANN DAUPHINOT
JUSTICE

---

[27] *Ex parte Halsted*, 147 Tex. Crim. 453, 182 S.W.2d 479, 482 (1944).

[28] *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988) (citations omitted).

[29] *See* TEX. R. APP. P. 47.1.

[30] *See Shannon v. State*, 129 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

PANEL B: DAUPHINOT, GARDNER, and MCCOY, JJ.

MCCOY, J. concurs without opinion.

PUBLISH

DELIVERED: April 3, 2008