

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00188-CR

———————————————

EX PARTE CHARLES BARTON

On Appeal from County Criminal Court No. 8
Tarrant County, Texas
Trial Court No. 1314404

Before Sudderth, C.J., and Kerr, J.[1]
Opinion by Chief Justice Sudderth

---

[1]Justice Bill Meier was a member of the original panel but has since retired. Therefore, the two remaining justices decided the case. *See* Tex. R. App. P. 41.1(b).

**OPINION ON REHEARING**

Appellee the State of Texas filed a motion for rehearing of our August 8, 2019 opinion and judgment. We deny the motion but withdraw our prior opinion and substitute the following in its place. With the exception of a footnote added to address the State's argument for rehearing, our opinion otherwise remains unchanged.

Appellant Charles Barton appeals from the trial court's order denying his application for writ of habeas corpus. In three points, he argues that the version of penal code section 42.07(a)(7) under which he was charged is unconstitutionally overbroad and vague and that the charging instrument fails to give him notice of the offense. *See* Act of June 15, 2001, 77th Leg., R.S., ch. 1222, 2001 Tex. Gen. Laws 2795 (amended 2013) (current version at Tex. Penal Code Ann. § 42.07(a)(7)). Because we agree with Barton that the 2001 version of section 42.07(a)(7) is unconstitutionally vague and overbroad on its face, we reverse.

## Background

In February 2013, Barton was charged by information with nine counts of harassment by sending electronic text messages or email communications to his ex-wife.[2] He moved to quash the information on the grounds that penal code section 42.07(a)(7) was unconstitutional and that the information lacked the requisite

---

[2]The nine counts similarly charge that on different dates, Barton "did then and there intentionally, in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Mona Dawson, send repeated electronic communications, to wit: text messages or email communications to Mona Dawson."

specificity. After the trial court denied the motion to quash, Barton filed an application for writ of habeas corpus, again challenging the constitutionality of section 42.07(a)(7).[3] The trial court denied the application, and this appeal followed.

## Discussion

We review a constitutional challenge de novo as a question of law, and we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Goyzueta v. State*, 266 S.W.3d 126, 130 (Tex. App.—Fort Worth 2008, no pet.). At the time that Barton was charged, the statute, entitled "Harassment," provided in relevant part,

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment or embarrass another, he:
>
> . . . .
>
> (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.
>
> . . . .
>
> (b) In this section:
>
> (1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system. The term includes:

---

[3]An accused may challenge the facial constitutionality of a statute defining the charged offense through a pretrial application for writ of habeas corpus. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014) (citing *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010)).

(A)  a communication initiated by electronic mail, instant message, network call, or facsimile machine;[4] and

(B)  a communication made to a pager.

Act of June 15, 2001, 77th Leg., R.S., ch. 1222, 2001 Tex. Gen. Laws 2795 (amended 2013).

As the accused, Barton bears the burden to establish the statute's unconstitutionality.[5] *Goyzueta,* 266 S.W.3d at 130.  In his first and second points, Barton argues that penal code section 42.07(a)(7) is unconstitutionally vague and overbroad, both facially and as applied to him.[6]  First, Barton contends that the

_____

[4]The definition of "electronic communication" was amended in 2017.  It now reads: "(A) a communication initiated through the use of electronic mail, instant message, network call, a cellular or other type of telephone, a computer, a camera, text message, a social media platform or application, an Internet website, any other Internet-based communication tool, or facsimile machine; and (B) a communication made to a pager."  Tex. Penal Code Ann. § 42.07(b)(1)(A).  We construe only the law as it existed in 2013.

[5]Barton did not argue to the trial court and does not argue before this court that section 42.07(a)(7) constitutes a content-based restriction on speech, which would shift the burden to the State and require the application of strict scrutiny.  *See Reed v. Town of Gilbert, Ariz.,* 135 S. Ct. 2218, 2232 (2015).  Barton has therefore forfeited any such argument and we will apply the "normal standard of review," presuming that the statute is valid and placing the burden upon Barton to establish its unconstitutionality.  *Wagner v. State,* 539 S.W.3d 298, 316–17 (Tex. Crim. App. 2018).

[6]A claim that a statute is unconstitutional on its face is a claim that the statute, by its terms, always operates unconstitutionally.  *Gillenwaters v. State,* 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006).  A claim that a statute is unconstitutional "as applied" is a claim that the statute operates unconstitutionally with respect to the defendant because of his particular circumstances.  *Id.* at n.3.

statute is vague because the terms "annoy" and "alarm" are reasonably susceptible to different meanings to different people and because the section "lacks a clear standard of conduct . . . and is dependent on each complainant's sensitivity." Second, Barton contends that section 42.07(a)(7) is overbroad because it "chills First Amendment protected speech" and "prevents a spouse from expressing his true feelings, emotions or needs to his spouse for fear that his speech may be deemed 'annoying' and therefore criminal."[7] The State responds that section 42.07(a)(7) is neither overbroad nor vague.

We agree with Barton that section 42.07(a)(7) is facially unconstitutional because it is vague and overbroad and therefore do not reach his third point attacking the nonspecific nature of the information. Tex. R. App. P. 47.1.[8]

---

[7]In its motion for rehearing, the State asserts that Appellant has never argued that 42.07(a)(7) is unconstitutionally overbroad. This is an about-face from the State's previous briefing, which not only acknowledged Appellant's overbreadth arguments but in fact referred to them no fewer than seven times in its response brief, including a four-page subsection titled, "Section 42.07(a)(7) is not unconstitutionally **overbroad** because it does not criminalize protected speech." [Emphasis added.] We disagree with the State's new position.

[8]In his third point, Barton argues that the information was invalid and should have been quashed because it failed to clearly specify the manner and the means by which he allegedly violated penal code subsection 42.07(a)(7). Although we do not reach this point, we note that we have no jurisdiction to review interlocutory orders unless that jurisdiction has been expressly granted by law, and no law authorizes an interlocutory appeal of an order denying a motion to quash. *Apolinar v. State*, 820 S.W.2d 792, 794 (Tex. Crim. App. 1991); *Ex parte Alvear*, 524 S.W.3d 261, 263 (Tex. App.—Waco 2016, pet. ref'd).

## I. Section 42.07(a)(7)'s impact on the guarantee of free speech

The First Amendment protects the freedom of speech and applies to the states by virtue of the Fourteenth Amendment. U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech."); *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 638–39, 63 S. Ct. 1178, 1185–86 (1943). The protection of free speech includes the "free communication and receipt of ideas, opinions, and information." *Scott v. State*, 322 S.W.3d 662, 668 (Tex. Crim. App. 2010) (citing *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S. Ct. 1794, 1806 (1969); and *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S. Ct. 766, 769–70 (1942)). But the guarantee of free speech is not absolute and the State "may lawfully proscribe communicative conduct that invades the substantial privacy interests of another in an essentially intolerable manner." *Id.* (citing *Cohen v. California*, 403 U.S. 15, 21, 91 S. Ct. 1780, 1786 (1971)).

Because this is a First Amendment challenge, we must first determine whether it "reaches a substantial amount of constitutionally protected conduct" before considering whether section 42.07(a)(7) is facially overbroad or vague. *Vill. of Hoffman Estates, v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982).

Almost a decade ago, the court of criminal appeals addressed the issue of whether the language of section 42.07 affects protected speech in the context of its prohibition of harassing telephone calls.[9] *Scott*, 322 S.W.3d at 666. In that case, Scott

---

[9]The subsection at issue provided: "A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated

moved to quash an indictment that charged him with violating the telephone-harassment subsection by calling the complainant "repeatedly by telephone while intoxicated, late at night, leaving abusive and harassing voice mail messages." *Id.* at 665. His motion was denied and he was convicted, but the court of appeals agreed with his argument that the telephone-harassment subsection was facially unconstitutional in violation of the First Amendment because it was unduly vague. *Scott v. State*, 298 S.W.3d 264, 270–73 (Tex. App.—San Antonio 2009),[10] *rev'd*, *Scott*, 322 S.W.3d at 671.

The court of criminal appeals reversed and held that telephone communications that violated the harassment statute were "essentially noncommunicative" because "in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake." *Scott*, 322 S.W.3d at 669–70. In other words, the court of

---

telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* at 666 n.4; *see also* Act of June 15, 2001, 77th Leg., R.S., ch. 1222, 2001 Tex. Gen. Laws 2795 (amended 2013) (current version at Tex. Penal Code Ann. § 42.07(a)(4)).

[10]The San Antonio court additionally held that the electronic-communications subsection was unduly vague based upon its interpretation of a second charging instrument against Scott as charging him with violating section 42.07(a)(7). *Id.* at 269. The court of criminal appeals disagreed with the San Antonio court's interpretation of the second charging instrument, held that the charging instrument did not involve an electronic communication, and held that the court of appeals erred in addressing the constitutionality of subsection 42.07(a)(7). *Scott*, 322 S.W.3d at 668.

criminal appeals concluded that the telephone-harassment subsection was only susceptible of application to communicative conduct "when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner." *Id.* Because section 42.07(a)(4) did not reach communicative conduct, it did not implicate the free-speech guarantee of the First Amendment. *Id.*[11]

Presiding Judge Keller disagreed with the majority's decision. In her dissent, she argued that section 42.07(a)(4) implicated the First Amendment "with respect to the terms 'annoy,' 'alarm,' 'embarrass,' and 'offend,'"—emotional states that she identified as "low intensity"—but did not implicate the First Amendment "with respect to the terms 'harass,' 'abuse,' and 'torment'"—emotional states that she identified as "high intensity." *Id.* at 676 (Keller, P.J., dissenting). The distinction she drew between low and high intensity emotional states was in part based on the inherently personal and invasive nature of telephone calls:

---

[11]At least four of our sister courts have applied this reasoning to a First Amendment analysis of subsection 42.07(a)(7). *See Ex parte Hinojos*, No. 08-17-00077-CR, 2018 WL 6629678, at *5–6 (Tex. App.—El Paso Dec. 19, 2018, pet. ref'd) (not designated for publication); *Ex parte Reece*, No. 11-16-00196-CR, 2016 WL 6998930, at *3 (Tex. App.—Eastland Nov. 30, 2016, pet ref'd) (mem. op., not designated for publication); *Blanchard v. State*, No. 03-16-00014-CR, 2016 WL 3144142, at *3 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication); *Lebo v. State*, 474 S.W.3d 402, 407 (Tex. App.—San Antonio 2015, pet. ref'd). We disagree with those courts for the reasons discussed herein.

8

[T]he telephone is a comparatively personal and private method of communication in which messages can be difficult to screen. . . . [I]t is a device readily susceptible to abuse by a person who intends to be a constant trespasser upon our privacy. When the intent of the actor is to inflict one of the higher-intensity emotional states of harass, abuse, and torment in the **relatively private, "captive-audience" telephone context**, and the actor's conduct is reasonably likely to achieve that end, the First Amendment provides no protection.

*Id.* (citation and footnotes omitted) (emphasis added).

Keller disagreed with what she assessed as the majority's unnecessary "graft[ing of] 'sole intent' onto the harassment statute as a narrowing construction." *Id.* at 676 ("[I]f the court is implying that situations are rare in which a person has more than one intent, I disagree. The mischief this statute can create is enormous."). As an example, she wrote, "One can easily imagine an ex-boyfriend hounding someone over the telephone with the intent to harass, abuse, or torment, but also having a particular grievance, real or imagined, to communicate." *Id.* at 677.

Four years later, the court of criminal appeals disavowed portions of the *Scott* decision. In *Wilson v. State*, it directly abrogated dicta in a footnote in the *Scott* decision that defined "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode." 448 S.W.3d 418, 422 (Tex. Crim. App. 2014) (discussing and quoting *Scott*, 322 S.W.3d at 669 n.12 (majority opinion)). But more important to this case, the court of criminal appeals acknowledged that a potential offender could have more than one intent in

9

delivering harassing conduct. *Id.* at 425; *see also id.* at 426 (Keller, P.J., concurring) (describing the majority decision as "abandoning" the sole-intent requirement).

The court's decision in *Wilson* addressed an evidentiary-sufficiency challenge to a conviction for telephonic harassment under subsection (a)(4); it did not address a challenge to the constitutionality of the statute. *Id.* at 424–26 (majority opinion) (noting that constitutional vagueness and overbreadth challenges were not implicated in the appellant's legal-sufficiency challenge). But the court did acknowledge the potential that a "facially legitimate" reason may exist in a harassing phone call. *Id.* at 425 ("[T]he existence of evidence that may support the conclusion that the call had a facially legitimate purpose does not legally negate the prohibited intent or manner of the call."). In her concurring opinion, which was joined by Judge Cheryl Johnson, Presiding Judge Keller reiterated her warnings of the overbreadth of the statute and urged the court to re-evaluate the holding in *Scott* at its next opportunity. *Id.* at 426 (Keller, P.J., concurring).

We agree that the *Wilson* decision recognized that a person who communicates with the intent to harass, annoy, alarm, abuse, torment, or embarrass can also have an intent to engage in the legitimate communication of ideas, opinions, information, or grievances. *See Scott*, 322 S.W.3d at 669–70. As the court explained in *Wilson*, a phone call by the appellant (a neighbor of the complainant) had both a facially legitimate reason behind it—to inform the complainant of construction issues—and could also have been made with an intent to harass or annoy the complainant when viewed in

10

the context of other harassing phone calls made by the appellant.[12] *Wilson*, 448 S.W.3d at 425.

Indeed, four years after *Wilson*, this court rejected such an argument when we held that the electronic-communications provision of the harassment statute—section 42.07(a)(7)—was unconstitutionally vague and, therefore, void. *Karenev v. State*, 258 S.W.3d 210, 213 (Tex. App.—Fort Worth 2008), *rev'd on other grounds*, 281 S.W.3d 428 (Tex. Crim. App. 2009). As we pointed out, the problem with the State's argument that harassment is not First Amendment protected speech was that the challenged statute itself defined harassment, and "[u]nless the harassment statute [was] sufficiently clear to withstand constitutional scrutiny, no unlawful harassment exists that would be excluded from First Amendment protection." *Id.* We agree with our prior holding in this respect.

Having held that section 42.07(a)(7) affects protected speech, we turn to an analysis of its vagueness and overbreadth.

## II. The vagueness and overbreadth of section 42.07(a)(7)

### A. Applicable law of vagueness and overbreadth analyses

"[V]ague laws offend the Federal Constitution by allowing arbitrary and discriminatory enforcement, by failing to provide fair warning, and by inhibiting the exercise of First Amendment freedoms." *May v. State*, 765 S.W.2d 438, 439 (Tex.

---

[12]Barton's counsel supplied another apt example at oral argument: a father's repeated text messages to his teenage child asking the teenager to mow the lawn.

Crim. App. 1989). When examining the vagueness of a statute, we focus on the statute's ability to provide fair notice of the prohibited conduct. *State v. Doyal*, No. PD-0254-18, 2019 WL 944022, at *5 (Tex. Crim. App. Feb. 27, 2019) (requiring that a law imposing criminal liability be sufficiently clear "(1) to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) to establish determinate guidelines for law enforcement"). A law that implicates First Amendment freedoms requires even greater specificity "to avoid chilling protected expression." *Id.* As the court of criminal appeals recently explained, specificity and clarity are important to prevent citizens from "steer[ing] far wider of the unlawful zone than if the boundaries of the forbidden areas are clearly marked." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S. Ct. 2294, 2299 (1972)). And the United States Supreme Court has also emphasized the importance of specificity and clarity so that law enforcement has "minimal guidelines" to prevent "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858–59 (1983).

Vagueness and overbreadth are intertwined. *Long v. State*, 931 S.W.2d 285, 288 (Tex. Crim. App. 1996) (citing *Kramer v. Price*, 712 F.2d 174, 176 n.3, 177 (5th Cir.), *reh'g en banc granted and prior opinion vacated,* 716 F.2d 284 (5th Cir. 1983), *aff'g dist ct.*, 723 F.2d 1164 (5th Cir. 1984) (en banc opinion) (per curiam)). A statute is overbroad in violation of the First Amendment guarantee of free speech if in addition to proscribing activity that may be constitutionally forbidden, it sweeps within its

12

coverage a substantial amount of expressive activity that is protected by the First Amendment.[13] *Morehead v. State*, 807 S.W.2d 577, 580 (Tex. Crim. App. 1991). The statute's oppressive affect cannot be minor—it must "prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'" *State v. Johnson*, 475 S.W.3d 860, 865 (Tex. Crim. App. 2015) (footnotes and citations omitted).

**B. The vagueness of "harass, annoy, alarm, abuse, torment, or embarrass" in light of the statute's overbreadth**

The criminalization of "annoying" behavior—without any objective measurement or standard—has been repeatedly held unconstitutionally vague:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly

---

[13]A First Amendment overbreadth challenge operates differently than other facial constitutional challenges. Generally, a facial challenge to the constitutionality of a statute must fail if it does not show that the statute, by its terms, always operates unconstitutionally. *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006). And as a general principle, a defendant does not have standing to challenge a statute on the ground that it may be unconstitutionally applied to the conduct of others. *State v. Johnson*, 475 S.W.3d 860, 865 (Tex. Crim. App. 2015) (citing *Cty. Court of Ulster, N.Y. v. Allen*, 442 U.S. 140, 155, 99 S. Ct. 2213, 2223 (1979); and *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 2914 (1973)). But the First Amendment's overbreadth doctrine allows a court to declare a law unconstitutional on its face "even if it may have some legitimate application and even if the parties before the court were not engaged in activity protected by the First Amendment." *Id.* at 864–65 (citing *United States v. Stevens*, 559 U.S. 460, 473, 130 S. Ct. 1577, 1587 (2010); and *Sabri v. United States*, 541 U.S. 600, 609–10, 124 S. Ct. 1941, 1948–49 (2004)).

subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*United States v. Williams*, 553 U.S. 285, 306, 128 S. Ct. 1830, 1846 (2008) (citing *Coates v. Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688 (1971); and *Reno v. ACLU*, 521 U.S. 844, 870-71, n.35, 117 S. Ct. 2329, 2343–44, n.35 (1997)).

Both the Fifth Circuit and the court of criminal appeals have held that prior versions of section 42.07 were unconstitutionally vague because of the words used to describe the offensive behavior—"harass, annoy, alarm, abuse, torment, or embarrass." *Kramer*, 712 F.2d at 176–78; *Long*, 931 S.W.2d at 297; *May*, 765 S.W.2d at 440. This court previously held that the 2001 version of the electronic-communications subsection was unconstitutionally vague for similar reasons. *Karenev*, 258 S.W.3d at 217.

In 1983, the Fifth Circuit addressed the pre-1983 harassment statute's provision that a person committed an offense by intentionally communicating by phone or in writing in a way that "intentionally, knowingly, or recklessly annoys or alarms the recipient." *Kramer*, 712 F.2d at 176; *see* Act of June 14, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 956–57 (amended 1983) (current version at Tex. Penal Code Ann. § 42.07(a)). The Fifth Circuit held that the terms "annoy" and "alarm" were inherently vague. *Kramer*, 712 F.2d at 178 (relying in part on *Coates*, 402 U.S. at 614, 91 S. Ct. at 1688, which struck down an Ohio statute's use of the term "annoy" and explained, "Conduct that annoys some people does not annoy others").

14

The Fifth Circuit placed even more importance on the fact that Texas courts had "refused to construe the statute to indicate whose sensibilities must be offended." *Id.* The court held that the statute was unconstitutionally vague, and the court of criminal appeals adopted this holding in *May.* 765 S.W.2d at 439–40 ("It is axiomatic that vague laws offend the Federal Constitution by allowing arbitrary and discriminatory enforcement, by failing to provide fair warning, and by inhibiting the exercise of First Amendment freedoms.").

In response to *Kramer*, the Texas Legislature amended section 42.07—only to have the court of criminal appeals again hold it unconstitutionally vague in 1996. *See Long*, 931 S.W.2d at 297. The court addressed the constitutionality of part of the 1993 version of the statute in *Long*, the stalking offense, providing that a person committed an offense if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," the person:

> (7)(A) on more than one occasion engages in conduct directed specifically toward the other person, including following that person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person;
>
> (B) on at least one of those occasions by acts or words threatens to inflict bodily injury on that person or to commit an offense against that person, a member of that person's family, or that person's property; and
>
> (C) on at least one of those occasions engages in the conduct after the person toward whom the conduct is specifically directed has reported to a law enforcement agency the conduct described by this subdivision.

*Id.* at 288 (citing Act of March 19, 1993, 73rd Leg., R.S., ch. 10, 1993 Tex. Gen. Laws 46–47 (amended 1995) (current version at Tex. Penal Code Ann. § 42.07(a)). The court of criminal appeals explained that this version suffered from the same flaws denounced in *Kramer* and *May* and that the addition of the words "harass," "abuse," "torment," and "embarrass" did nothing to remedy these flaws. *Id.* at 289. The court observed that "all [of] these terms are joined with a disjunctive 'or,' and thus do nothing to limit the vagueness originally generated by 'annoy' and 'alarm.' Moreover, the additional terms are themselves susceptible to uncertainties of meaning." *Id.*

The court did not agree with the parties that the legislature included a "reasonable person" standard by requiring that the behavior be "reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person." *Id.* The court explained that this language provided that the defendant's behavior should be measured from the perspective of the complainant—not that of a reasonable person. *Id.*

The court held that former subsection (a)(7)(B)'s threat requirement and (a)(7)(C)'s report requirement did not save the statute. *Id.* at 290-94. The purpose of subsection (a)(7)(B) was "fatally undermined by the threat requirement's relationship to the conduct requirement in (a)(7)(A)." *Id.* at 291. The stalking offense required at least two instances of conduct, but the acts did not have to be related to each other and only one had to be a threat to inflict bodily injury or commit an offense against the complainant, the complainant's family, or the complainant's property. *Id.* at 293–

16

94. And subsection (a)(7)(C) did nothing to clarify the subsection because it did not require that the defendant know that the complainant reported his alleged harassment. *Id.* at 290–91 ("If the defendant is unaware of the report, then it cannot provide the requisite notice that he has violated the law."). The court therefore held that the stalking provision was unconstitutionally vague on its face. *Id.* at 297.

The legislature amended section 42.07 again in 2001 and for the first time added a new subsection governing electronic communications. *See* Act of June 15, 2001, 77th Leg., R.S., ch. 1222, 2001 Tex. Gen Laws 2795 (amended 2013). The 2001 version (under which Barton has been charged) criminalized sending "repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* In 2008, a prior panel of this court held that this subsection "suffers the same flaws as the old statute: it employs, in the disjunctive, a series of vague terms that are themselves susceptible to uncertainties of meaning." *Karenev*, 258 S.W.3d at 216. As this court explained, the legislature did not attempt, in drafting the electronic-communications subsection, to avoid those problems that were highlighted in *Long* by tying the offending conduct to "a more specific mental state than a mere intent to annoy, such as intent to place in fear of bodily injury, or with a more intense mental state, such as intent to frighten," and it did not establish any nexus between a threat requirement and a conduct requirement. *Id.* at 216–17 (quoting *Long*, 931 S.W.2d at 293–94).

17

On review, the court of criminal appeals did not reach the question of subsection (a)(7)'s constitutionality but reversed *Karenev* on forfeiture grounds. *See Karenev*, 281 S.W.3d at 428 (holding that the defendant forfeited his argument of facial unconstitutionality by failing to raise it in the trial court). Although it has been presented with the opportunity to address a First Amendment constitutional challenge to the "electronic communications" subsection at least twice since *Karenev* was decided, the court of criminal appeals has not yet weighed in. *See Ogle v. State*, 563 S.W.3d 912, 912 (Tex. Crim. App. 2018) (mem. op.) (Keller, P.J., dissenting to refusal of pet.), *petition for cert. filed*, (U.S. Mar. 8, 2019) (No. 18-1182); *Ex parte Reece*, 517 S.W.3d 108, 110-11 (Tex. Crim. App. 2017) (mem. op.) (Keller, P.J., dissenting to refusal of pet.).[14]

Having held that section 42.07(a)(7) reaches First Amendment speech, we agree with our analysis in *Karenev* that the subsection suffers from a fatal flaw of vagueness because the disjunctive series of the terms "harass, annoy, alarm, abuse, torment, embarrass, or offend" leaves the electronic-communications subsection open to

---

[14]In both cases, Presiding Judge Keller dissented to the denial of review, urging the court to review the constitutionality of subsection (a)(7) in light of its "breathtaking" breadth. *Reece*, 517 S.W.3d at 111. The United States Supreme Court is currently considering Ogle's request for certiorari review; the State filed its response to Ogle's petition on July 22, 2019. *Ogle*, No. 18-1182 (2019).

various "uncertainties of meaning." *Karenev*, 258 S.W.3d at 215 (citing and quoting *Long*, 931 S.W.2d at 289). And consistent with *Karenev* and *Long*, we conclude that the term "reasonably likely" does not create a "reasonable person" standard sufficient to cure the failure of the subsection to specify whose sensitivities were offended. *Id.* (discussing *Long*, 931 S.W.2d at 288–90). As best explained in *Long*:

> A reasonable person standard, even if present, probably would not, by itself, be enough to save (a)(7)(A) from a constitutional challenge. Even with an objective standard, vagueness may still inhere in the expansive nature of the conduct described. Moreover, even if a reasonable person standard clarified the law sufficiently to avoid a vagueness challenge, it would run into a serious overbreadth problem. The First Amendment does not permit the outlawing of conduct merely because the speaker intends to annoy the listener and a reasonable person would in fact be annoyed. Many legitimate political protests, for example, contain both of these elements.

*Long*, 931 S.W.2d at 297 n.4[15] (internal citations omitted).

Section 42.07(a)(7) has the potential to reach a vast array of communications. At the time that Barton was charged with violating subsection (a)(7), "electronic communications" was defined as "*includ[ing]*: a communication initiated by electronic mail, instant message, network call, or facsimile machine." Act of June 15, 2001, 77th Leg., R.S., ch. 1222, 2001 Tex. Gen. Laws 2795 (amended 2013) (emphasis added).

---

[15]The staggering breadth of the electronic-communications subsection is one factor which distinguishes that subsection from the firearm-brandishing subsection of the disorderly-conduct statute addressed in the court of criminal appeals' recent opinion in *State v. Ross*, 573 S.W.3d 817 (Tex. Crim. App. 2019), in which the court held that the statute's use of "the phrase 'a manner calculated to alarm' means a manner that is objectively likely to frighten an ordinary, reasonable person."

The term "includes" is a term of enlargement, not of limitation or exclusion, and we do not presume that "components not expressed are excluded." *In re Perry*, 483 S.W.3d 884, 909 (Tex. Crim. App. 2016). This subsection as written therefore has the potential to reach any number of electronic communications, as Presiding Judge Keller has pointed out:

> This provision is not limited to emails, instant messages, or pager calls. It also applies, for example, to facebook posts, message-board posts, blog posts, blog comments, and newspaper article comments. If a person makes two posts or comments on the internet with the intent to annoy or alarm another, and those two communications are reasonably likely to annoy, alarm, or offend the same person, then a person can be subjected to criminal punishment under this provision.

*Reece*, 517 S.W.3d at 111.[16]

It is safe to say that when *Long* was decided in 1996 and even when *Karenev* was decided in 2008, we had only a faint idea of the impact that electronic communications and the Internet would have on our society as a whole. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017) (explaining that we are only now at the beginning of the "Cyber Age" and are still unable to fully grasp and appreciate the "full dimensions and vast potential [of the Internet] to alter how we think, express ourselves, and define who we want to be," and that "[t]he forces and directions of the Internet are so new, so protean, and so far reaching that courts must

---

[16]In fact, this definition of "electronic communication" has recently been expanded to explicitly include communications initiated through the use of "a cellular or other type of telephone, a computer, a camera, text message, a social media platform or application, an Internet website, [and] any other Internet-based communication tool." Tex. Penal Code Ann. § 42.07(b)(1)(A).

be conscious that what they say today might be obsolete tomorrow"). The Supreme Court recently identified the Internet, and "social media in particular," as "the most important place[]" for the exchange of views among persons. *Id.* at 1735. Use of the Internet to communicate is now ubiquitous. *See id.* (reciting estimates that as of 2017, seven in ten American adults used at least one social networking service, with Facebook as the most popular service at the time with 1.79 billion active users).

Expanding on its past assessment of the Internet's offering of "relatively unlimited, low-cost capacity for communication of all kinds," *Reno*, 521 U.S. at 868, 117 S. Ct. at 2344, the Supreme Court observed in *Packingham* how people use social media to "debate religion and politics with their friends and neighbors or share vacation photos"; "look for work, advertise for employees, or review tips on entrepreneurship"; and "petition their elected representatives and otherwise engage with them in a direct manner." *Packingham*, 137 S. Ct. at 1735. Perhaps the best examples of the political, and often divisive, use of such platforms start with our governmental leaders. Public reactions to President Donald Trump's prolific tweeting run the gamut from amusement, to annoyance, to distress—and all points in between. *See* President Donald J. Trump (@realDonaldTrump), Twitter, https://twitter.com/realDonaldTrump; *see also, e.g.,* Sara Swartzwelder, Note, *Taking Orders from Tweets: Redefining the First Amendment Boundaries of Executive Speech in the Age of Social Media*, 16 First Amend. L. Rev. 538 (2018). Some have viewed his tweets as political posturing; others have viewed them as declarations of war. *See* Swartzwelder,

16 First Amend. L. Rev. at 538–39 (discussing President Trump's "little Rocket Man" tweet regarding North Korea, a North Korean official's statement that such tweet was a declaration of war, and the White House's dismissal of such an interpretation as "absurd"); *see also* Alexander Smith and Abigail Williams, *White House Rejects N. Korean Claim that Trump 'Declared War,'* NBC News, Sept. 25, 2017, https://www.nbcnews.com/news/north-korea/north-korean-foreign-minister-says-trump-has-declared-war-n804501.

Experience has taught us that whether the President's tweets—or an ex-spouse's emails—are annoying or offensive is a highly subjective inquiry, and the view of whether these communications are innocuous, humorous, annoying, or offensive will differ greatly from person to person. *See Kramer*, 712 F.2d at 178; *Long*, 931 S.W.2d at 297; *May*, 765 S.W.2d at 439–40; *Karenev*, 258 S.W.3d at 215. Consequently, we agree with Barton that the electronic-communications subsection is facially unconstitutional as vague and overbroad; as such, it is void and unenforceable. *See Karenev*, 258 S.W.3d at 218. We therefore sustain Barton's first and second points.

**Conclusion**

Having sustained Barton's first and second points and held section 42.07(a)(7) as it existed in 2013 is facially unconstitutional and, thus, void and unenforceable, we reverse the trial court's order denying Barton's application for writ of habeas corpus and remand this matter to the trial court to enter an order dismissing the prosecution of charges against Barton on alleged violations of section 42.07(a)(7) of the Texas

22

Penal Code. *See Long*, 931 S.W.2d at 297 (remanding case to trial court to enter an order dismissing the prosecution). We do not reach Barton's third point. Tex. R. App. P. 47.1.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Publish

Delivered: October 3, 2019